JAMES B. REES, and ROBERT BURKHISER *vs.* JOSEPH LOGSDON, and his Wife, CATHERINE LOGSDON.

*Extinguishment or Merger—Agreement under Seal—Mortgage—Collateral security—Interest—Set-off.*

The acceptance of a security of a higher nature in lieu of or in satisfaction of one of an inferior nature, operates as an extinguishment or merger of the latter. But where such security is accepted merely as an additional or collateral security for a pre-existing debt, the doctrine of extinguishment or merger does not apply.

By an agreement under seal between B. and R. owners of a saw-mill, and L. the owner of a tract of timber land, the former agreed to move their saw-mill on the land of L. and saw his timber at a stipulated price, and take the sawing out in lumber. It was also agreed that L. could have the privilege of taking the mill at fourteen hundred dollars, and pay for it all in lumber at an agreed rate per thousand feet, without stating any period for its delivery. Soon after the saw-mill was moved on the land of L. he purchased it in exercise of the option given by the agreement. Security being demanded by R. and B., L. and his wife executed a mortgage to them to secure the payment of two notes for $700 each, payable in six and eighteen months, respectively, with interest. After some payments in lumber had been made by L. which were received and receipted for by R. and B. as part payment of the mortgage notes at the rate specified in the agreement, they refused to receive any more. On a bill filed by R. and B. to foreclose the mortgage, it was HELD:

1st. That as between the parties to the agreement, the mortgage was merely an additional or collateral security for the payment of the amount for which the mill was sold.

2nd. That L. was entitled to the privilege of paying his debt, if he so elected, in lumber according to the agreement.

3rd. That as L. had not made default, interest should not be computed against him until he did, as none was contemplated by the agreement.

4th.  That even if the agreement had called for the payment of interest, a Court of equity would be justified in offsetting such a claim by the damages and loss which L. had sustained by the depreciation of the market for his timber, that he relied on under his agreement with R. and B. and which they wrongfully deprived him of.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The appellants filed a bill against the appellees, Joseph Logsdon, and his wife, for the foreclosure of a mortgage made by them purporting on its face to secure the payment of two notes for $700, each, drawn by said Joseph Logsdon in favor of the appellants, dated the 22nd of June, 1883, and payable respectively in six and eighteen months, with interest from date.  The Court below (HOFFMAN, J.,) passed a decree on the 15th of July, 1887, declaring that the complainants were not entitled to a decree for an immediate sale of the mortgaged premises; and adjudged that the defendant, Joseph Logsdon, should pay in money, or deliver or tender in lumber, (at his option) at the rate and in accordance with the terms of the original agreement filed in the case, the balance due on the first of said notes, or its equivalent in lumber under said agreement, on or before the 15th of October, 1887, without interest, and the amount of the second note, on or before the 15th of April, 1889, without interest, in full satisfaction of the mortgage debt; and that upon default in respect to either of said payments of money or lumber, the mortgaged premises be sold.  The complainants appealed.  The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*C. W. Dailey,* and *Ferdinand Williams,* for the appellants.

The following authorities were relied on :  *Leonard vs, Hughlett,* 41 *Md.,* 387; *Lefferman vs. Renshaw,* 45 *Md..*

Rees and Burkhiser *vs.* Logsdon.

119; 2 *Parsons on Contracts*, (*6th Ed.*,) 650, *note m, and* 654, 655; *Townsend vs. Wells*, 3 *Day*, 327; *Orr vs. Williams*, 5 *Humph.*, 423; *Fleming vs. Potter*, 7 *Watts*, 380.

*Benjamin A. Richmond*, for the appellees.

STONE, J., delivered the opinion of the Court.

In May, 1883, the appellants were the owners of a saw-mill, and the appellee the owner of a tract of timber land in Alleghany County.    In that month they entered into the following agreement:

"This agreement made this the 7th day of May, 1883, between Joseph Logsdon, of Alleghany County, Md., and Burkhiser and Rees, of Mineral County, W. Va., the parties of the second part, do agree to move the saw-mill on the property of the party of the first part, in Alleghany County, Md., on or before the 10th day of June, 1883; and the said party of the second part agrees to saw said Logsdon's timber for four dollars per thousand feet; and the said party of the second part does agree to take all the sawing out in lumber—that is, such lumber as is suitable for wagon stuff, cut according to dimensions given:   Said Logsdon does agree to furnish the lumber at $16.00 per thousand, delivered at the factory of Germond, Rees & Co., in Keyser, W. Va."

"The said Logsdon further agrees to keep the mill in logs as far as possible; and the party of the second part agrees to saw good lumber; and the parties of the second part do further agree that the party of the first part can have the privilege of taking the mill at fourteen hundred dollars, and pay for it all in lumber at $16.00 per thousand, delivered at the factory of Germond, Rees & Co., in Keyser, W. Va."

"Witness our hands and seals, this the 7th day of May, 1883."

"BURKHISER & REES, [Seal.]<br>
JOSEPH LOGSDON,    [Seal.]"

Soon after the saw-mill was moved on the land of Lógsdon, the appellee, he exercised the option given him under the agreement, and purchased the mill. Security was demanded by the appellants, and Logsdon and wife executed a mortgage to the appellants to secure the sum of fourteen hundred dollars. The mortgage itself is in the common form and makes no allusion to the agreement, or for what it was given, except that it recites an indebtedness on the part of Logsdon to the appellants in the sum of fourteen hundred dollars. There is, however, no doubt that this mortgage was given to secure the payment for the mill. On that point there is no conflict in the evidence.

The appellants subsequently filed a bill to foreclose the mortgage, and the defence set up by the appellee is that by the agreement, under which he purchased the mill, he was to pay for it *in lumber*, and that he began his payments and continued them until the appellants refused to receive any more lumber, and so the matter rested until suit was brought.

The substantial question in the case is, therefore, whether the agreement is merged in the subsequent mortgage, or whether the mortgage was taken merely as *collateral security* for the performance of the agreement.

There is no doubt that the acceptance of a security of a higher nature in lieu of or in satisfaction of one of an inferior nature, operates as an extinguishment or merger of the latter; but where such security is accepted merely as an additional or collateral security for a pre-existing debt, it is equally clear that the doctrine of extinguishment or merger does not apply. *Brengle vs. Bushey*, 40 *Md.*, 141, and the cases there cited.

The question whether the mortgage in this case was taken merely as collateral security is, therefore, one of fact, and the burden of proof is upon the appellee to show that such was the case. Taking the whole evidence we think

the appellee has made out his case with reasonable certainty.

There is a conflict between the parol proof offered by the appellants and the appellee. They, themselves, are the only witnesses of any importance; but the written proof, as well as the parol, we think, establishes the following facts:

The appellants at the time they made the agreement of the 7th of May, 1883, were carrying on a spoke factory, and were in want of timber for the use of the factory. They first agreed with the appellee, Logsdon, to transport their mill to his land and to saw timber for him, and agreed to take *all their pay for such sawing in lumber*. This is the first part of the agreement. The second part of it gave Logsden the option to purchase the mill and to *pay for it all in lumber*. This agreement shows that the principal object of the appellants at the time the agreement was made, was to procure lumber for their factory. The sale was made within ten days after the mill was taken upon the land of Logsdon, and the mortgage was executed in a very short time afterwards.

At the time of the execution of the mortgage, the spoke factory of the appellants was in full operation, and the same desire existed on their part to get timber for their factory that existed when they made the agreement. This is conclusively shown by the fact that the appellee made some payments *in lumber*, which were received and receipted for by the appellants, as a part payment on the mortgage notes, at the rate specified *in the agreement*. In the face of the fact that after the mortgage was given, *both parties* were acting under the terms of the *agreement*, and not under those of the mortgage, it is impossible to conclude that the *agreement* was merged and done away with, and the mortgage substituted in its stead. And so they continued to act until the factory was closed either by the failure of appellants, or from other causes, and then, and not till then,

the appellants wrote to the appellee telling him not to send any more lumber. It is also clearly shown that the appellee had an abundance of timber, and was ready, and willing, and able to pay off his indebtedness in lumber within the time specified in the mortgage, to wit: six and eighteen months, and that he was only prevented from doing so by the peremptory order of appellants.

We are therefore of opinion, that the mortgage in this case was merely an *additional* or *collateral security*, and that the agreement was left in full force and effect. This agreement the appellants, themselves violated, but whether such violation was the result of their fault or misfortune, does not appear from the record; at any rate *they*, and not the *appellee*, broke the contract.

Every *fact* in the record points to the conclusion that the appellee made this purchase, and *gave this security*, because of the *sure and certain market* for his sawed lumber which the agreement guaranteed him. It is no concern of the appellants whether he did or could sell his lumber elsewhere.

The agreement is silent as to the *time* of the payment for the mill. This omission is supplied by the mortgage which fixed the times of payment at six and eighteen months.

The appellee had the right then, and has the same right now, to pay for it *in lumber* at the times specified in the mortgage. Had the appellants not broken their contract, and had the appellee failed to pay the amount of $700 in lumber at the expiration of six months from the date of the mortgage, the appellants would have been entitled to resort to the security of their mortgage. But by preventing the appellee from fulfilling his contract and disposing of his lumber to them at the *time he* anticipated doing so, the appellants cannot prevent his doing so now. To permit that would be to allow the appellants to take advantage of their own wrong. He is, therefore, clearly entitled to the privilege of paying his debt, if he so elects, according to the agreement, in lumber.

Rees and Burkhiser *vs.* Logsdon.

But stress has been laid in the argument against the decree of the lower Court, because the decree gave the appellee three and nine months in which to perform his contract. This is just one-half the time allowed him by the original agreement, and the Court below could not well have given less time, if it held, as it did, and we think rightly, that the appellee was entitled to go on and perform his contract as he had originally made it.

Objection is also made to the decree because no interest has been allowed the appellants, although the mortgage notes bear interest. Viewing, as we do, the mortgage a sa mere *collateral security* for the payment of the debt, the interest is not material. The rights of the parties depended on the *agreement*. If the *appellee* had made *default*, then, perhaps, the appellants in resorting to the mortgage would have been entitled to their interest. But the appellee has made no default, and until he does no interest should be computed against him, as certainly none was contemplated by the agreement.

But even if the agreement itself had called for the payment of interest, a Court of equity would have been justifiable in offsetting such a claim, by the damages and loss which the appellee sustained by the deprivation of the market for his timber that he relied on under his agreement with the appellants, and which they wrongfully deprived him of.

In conclusion, we may say that this is a case entirely between the parties to the agreement. That no rights of creditors or any third parties are involved. That certain legal propositions and considerations that might be properly invoked, if the rights of third parties were involved, can have no application here, and the decree will be affirmed.

*Decree affirmed,*
*and cause remanded.*